## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE BLACKFEET TRIBE OF THE )
BLACKFEET INDIAN RESERVATION, )
                   )    No. 02-127 L
           Plaintiff, )    Judge Lawrence Margolis
                   )
v.                      )    .
                   )
THE UNITED STATES OF AMERICA, )
                   )
          Defendant. )
_____)

### FIRST AMENDED COMPLAINT

       Plaintiff, by and through the undersigned attorney, for its complaint, hereby alleges as follows:

       1.   The Blackfeet Tribe of the Blackfeet Indian Reservation ("Tribe") brings this action to obtain an accounting and money damages relating to Defendant's repeated breaches of its statutory and fiduciary obligations owed to the Tribe with regard to the Tribe's trust funds and trust assets.

### PARTIES

       2.   Plaintiff Blackfeet Tribe of the Blackfeet Indian Reservation is a federally recognized Indian tribe with all the powers of self-government and all the rights and responsibilities of a sovereign Indian tribe.   *See* 74 Fed. Reg. 40218 (April 11, 2009).   The Tribe occupies the Blackfeet Reservation in Montana which encompasses approximately 1,500,000 acres.

       3.   Defendant United States owes fiduciary obligations to the Tribe, based on and imposed by the U.S. Constitution, federal treaties and statutes and federal common law,

pertaining to the Tribes' trust funds and trust assets, which responsibilities are carried out through the Bureau of Indian Affairs, including among others, the Office of Trust Funds Management and the Special Trustee for American Indians.

## JURISDICTION

4.   This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1491 and 28 U.S.C. § 1505.

## GENERAL ALLEGATIONS
## APPLICABLE TO ALL CLAIMS

5.   Historically, the Blackfeet Tribe occupied a vast territory in the western United States which constituted its aboriginal lands.   See Treaty of Fort Laramie, 11 Stat. 749 (Sept. 17, 1851).

6.   By Treaty of October 17, 1855, the Blackfeet Reservation was formally established. 11 Stat. 657 (Oct. 17, 1855).   The Reservation was subsequently modified by statute and Executive Orders.   *See* Act of April 15, 1874, 18 Stat. 28; Executive Order of July 5, 1873, 1 Kappler 855; Executive Order of August 19, 1874, 1 Kappler 856; Executive Order of April 13, 1875, 1 Kappler 856; Executive Order of July 13, 1880, 1 Kappler 856.   The boundaries were further modified by agreements between the Tribe and the United States which were ratified by Congress: Agreements of December 28, 1886 and January 21, 1887, ratified May 1, 1888, 25 Stat. 113; Agreement of September 26, 1895, ratified June 10, 1896, 29 Stat. 353. The Reservation currently comprises approximately 1,500,000 acres and consists of land originally set aside in 1855 as modified by subsequent statute, executive orders and agreements.

7.   By the Agreement of September 26, 1895, ratified June 10, 1896, 29 Stat. 353, and

the Tribe reserved:

> the right to go upon the lands hereby conveyed so long as the same shall remain
> public lands of the United States, and to cut and remove therefrom wood and
> timber for agency purposes, and for their personal uses for houses, fences, and all
> other domestic purposes: And provided further, That the said Indians hereby
> reserve and retain the right to hunt upon said lands and to fish in the streams
> thereof so long as the same shall remain public lands of the United States under
> and in accordance with the provisions of the game and fish laws of the State of
> Montana.

8.   A portion of the Blackfeet Reservation was allotted to individual members of the Tribe by the Act of March 1, 1907, 34 Stat. 1045, and the Act of June 30, 1919, 41 Stat. 3. Allotments under the 1919 statute were made subject to a reservation of "any and all minerals, including coal, oil, and gas ...for the benefit of the Blackfeet Tribe of Indians...."   The 1919 Act further provides that "the lands containing said minerals may be leased under such rules and regulations and upon such terms and conditions as the Secretary of the Interior may prescribe."

9.   By the Act of September 20, 1922, 12 Stat. 857, 25 U.S.C. § 400, Congress authorized that unallotted lands on the Blackfeet Reservation "may be leased for mining purposes under regulations prescribed by the Secretary of the Interior."

10.   As a result of the above treaties, agreements, executive orders and statutes, the Blackfeet Tribe is the beneficial owner of extensive agricultural and grazing lands, water rights, hunting and fishing rights, oil and gas resources, timber, gravel, funds and other assets held in trust and managed by the United States for the benefit of the Tribe.

11.   Prior to 1946 and continuing to the present, the United States as the Tribe's trustee has authorized hundreds of leases, rights of way, and other uses of tribal assets for itself and third parties which have generated or are intended to generate proceeds for the benefit of the Tribe. These proceeds make up a significant portion of the Tribe's trust funds.

12.   Additional assets held by the United States for the Tribe are derived from judgments on various claims brought by the Tribe against the United States.   This includes claims brought by the Tribe before the Indian Claims Commission under the Act of August 13, 1946, 60 Stat. 1029 (1946), and in the Court of Claims.   Funds to pay the various judgment awards were appropriated by Congress.   Act of October 21, 1968, 82 Stat 1190, 1198; 31 U.S.C. 724a (Jan 23, 1981); 31 U.S.C. § 1304(a).   Distribution plans for the judgment award were approved by Congress or by the Secretary of the Interior.   Act of Mar. 17, 1972, 86 Stat. 64; Act of Jan 3, 1983, 96 Stat. 2035; 47 Fed. Reg. 30295-01, l982 WL 142966 (Jan. 13, 1982).   Under each distribution plan a certain percentage of each of the awards was to be invested by the Secretary for the benefit of the Tribe.   The judgment awards are held in trust and managed by the United States for the benefit of the Tribe.

13.   Under the treaties, executive orders and statutes establishing the Blackfeet Reservation, and pursuant to the U.S. Constitution, the 1790 Trade and Intercourse Act as amended, 25 U.S.C. § 177, the Act of March 1, 1907, 34 Stat. 1045, the Act of June 30, 1919, 41 Stat. 3, the Act of September 20, 1922, 12 Stat. 857, and pursuant to general statutes applicable to the management and protection of Indian trust assets and trust funds, the United States comprehensively manages and controls the assets of the Tribe and has assumed the fiduciary obligations of a trustee to be exercised under the most exacting fiduciary standards.   The

4

fiduciary obligations incumbent on the United States are further derived from numerous additional statutes and regulations, including among others:   the Indian Non-Intercourse Act, 25 U.S.C. § 177; the Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. § 4001 e seq.; 25 U.S.C. §§ 161a, 162a; 25 U.S.C. § 152; 25 U.S.C. §§ 157-158, 160; 25 U.S.C. §§ 155-55b; 25 U.S.C. §§ 161a, 161b, 162a, 413; 31 U.S.C. § 1321(a) ; Indian Mineral Leasing Act of 1927, 25 U.S.C. § 398, 398a-398c;   Indian Mineral Leasing Act of 1938, 25 U.S.C. §§396a-396g; Federal Oil & Gas Royalty Management Act, 30 U.S.C. § 1701, et seq.; Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101-2108; 25 U.S.C. § 397 ; 25 U.S.C. § 399 ; 25 U.S.C. § 400 ; 25 C.F.R. pt. 211 ; 25 C.F.R. pt 216 ; 25 C.F.R. pt 225 ; 30 C.F.R. pt 206 ; National Indian Forest Resources Management Act, 25 U.S.C. § 3101 et seq.; 25 U.S. C. §§ 406-407 ; 25 U.S.C. § 466 ; 25 C.F.R .pt. 163; American Indian Agricultural Resource Management, 25 U.S.C § 3701 et seq.; 25 U.S.C. § 402 ; 25 U.S.C. § 402a ; 25 U.S.C. §415 ; 25 C.F.R. pt 162 ; 25 C.F.R. pt. 166; 25 U.S.C. §§311-12, 318a, 319, 321, 323-389 ; 25 C.F.R.pt. 169; Indian Judgment Fund Distribution Act, 25 U.S.C. §§ 1401-1408; 39 Fed. Reg. 1835 (Jan. 15. 1974); 25 C.F.R. §60.11, later 25 C.F.R. § 87.11; 25 C.F.R. pt. 87.

    14.   The above treaties, statues and regulations which serve as the foundation of the United States fiduciary obligations provide the "general contours" of the United States trust duties.   The details of the trust duties are filled in with reference to general trust law.   *United States v. Mitchell*, 463 U.S. 206, 226 (1983).

    15. Defendant has failed to manage and administer the Tribe's trust funds and trust assets and other income producing property in accordance with its statutory and fiduciary obligations, all to the continuing detriment of the Tribe.

16.   The Defendant has further failed to properly audit and reconcile tribal trust funds and trust assets and to provide the Tribe with an accounting of such trust funds and trust assets in breach of its statutory and fiduciary obligations to the Tribe.

## CLAIM I

### (Failure to Properly Collect Funds)

17.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 6 through 15 above.

18.   At all relevant times, Defendant has been under fiduciary and statutory obligations to collect funds owing to the Tribe arising from the use by Defendant or by third parties of tribal trust   assets, including agricultural lands, grazing lands, water rights, oil, gas, gravel, timber and other tribal assets under the management and control of the Defendant.

19.   In breach of its statutory and fiduciary duties to the Tribe and to the Tribe's detriment, Defendant has, among other things, delayed or failed to collect such funds.

20.   Defendant's breaches of its statutory and fiduciary obligations has resulted in (and continue to result in) losses to, as well as mismanagement of, the Tribe's trust funds and other trust property.

## CLAIM II

### (Failure to Adequately Manage and Administer Trust Funds)

21.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 6 through19 above.

22.   At all relevant times, Defendant has been under fiduciary and statutory obligations to manage and administer funds collected from the use by Defendant or by third parties of tribal

6

assets, including agricultural lands, grazing lands, water rights, oil, gas, gravel, timber and other tribal assets under the management and control of the Defendant.

23.   In breach of its statutory and fiduciary obligations to the Tribe and to the Tribe's detriment, Defendant has failed to adequately manage and administer the funds collected in the following manner.

a.   Defendant has delayed in depositing or failed to deposit such collected funds in interest bearing accounts;

b.   Defendant has failed to record all transactions pertaining to the Tribe's trust fund accounts;

c.   Defendant has recorded disbursements too soon;

d.   Defendant has failed to maintain appropriate cash balances;

e.   Defendant has held the funds in its Treasury at inadequate interest or inadequate rates;

f.   Defendant has failed to pay interest on interest accounts held for the Tribe;

g.   Defendant has failed to promptly invest and reinvest the funds;

h.   Defendant has failed to maximize the trust income by prudent investment.

i.   Defendant has failed to make investments as productive as legally possible;

j.   Defendant has improperly used the funds for purposes not for the exclusive benefit of the Tribe;

k.   Defendant has failed to maintain adequate books and records relating to deposits and disbursements from the Tribe's trust accounts

l.      Defendant has failed to manage and administer the Tribe's judgment

accounts in accordance with the applicable appropriation acts and

distribution plans.

24.   Defendant's breaches of its statutory and fiduciary obligations has resulted in (and

continue to result in) losses to, as well as mismanagement of, the Tribe's trust funds and other

trust property.

## CLAIM III

### (Failure to Adequately Administer and Manage Tribal Trust Assets)

25.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 6

through 23 above.

26.   At all relevant times, Defendant has been under statutory and fiduciary obligations

to manage and administer the Tribe's lands and resources and other assets of the Tribe.   In

breach of its statutory and fiduciary duties owed to the Tribes, and to the Tribe's detriment,

Defendant has mismanaged the Tribe' land, resources, and other trust assets in the following

manner.

27.   Defendant has failed to require proper leases, agreements or other authorizations for

use of tribal assets.

28.   Defendant has failed to require lessees and others using the Tribe's trust assets to

comply with the terms of their leases, agreements, rights of way and other governing statutes and

regulation and to terminate leases, agreements, rights of way or other governing documents.

29.   Defendant has failed to keep clear and accurate accounts with respect to the trust

property, including records of leases and other contractual arrangements.

30.   Defendant's breaches of its fiduciary obligations has resulted in (and continue to result in) losses to, as well as mismanagement of, the Tribe's trust funds and other trust property.

## CLAIM IV

### (Failure to Properly Account for and Audit Trust Funds and Trust Assets)

31.   Plaintiff realleges and incorporates by reference the allegations in paragraphs 6 through 29 above.

32.   The United States has statutory and fiduciary obligation to properly account for, provide periodic statement of performance and to audit tribal trust fund and trust assets.   In breach of its statutory and fiduciary obligations owed to the Tribes, and to the Tribe's detriment, Defendant has mismanaged the Tribe' land, resources, and other trust assets and trust funds in the following manner.

33.   Defendant has failed to properly account for, provide periodic statements of performance and audit tribal trust assets and tribal funds.

34.   Defendant's breaches of its fiduciary obligations has resulted in (and continue to result in) losses to, as well as mismanagement of, the Tribe's trust funds and trust assets.

## CLAIMS FOR RELIEF

Wherefore the Tribe prays for the following relief:

1.   For a determination that Defendant is liable to the Tribe in damages for the injuries and losses caused by the violations of the Defendant's fiduciary and statutory responsibilities to the Tribe.

2.   That Defendant be ordered to make such accounting, reports and audits of its management of the Tribe's trust assets and trust funds as required by the Defendant's fiduciary

and statutory responsibilities to the Tribe..

     3.   For a determination of the amount of damages due the Tribe, plus interest allowed by law.

     4.   That Defendant be ordered to preserve all records of any kind whatsoever pertaining to the Tribes's trust funds and trust assets during the pendency of this action.

     5.   That the court award costs and attorney fees to the Tribe.

     6.   For such other and further relief as the court deems appropriate.


Dated July 16, 2010.


                         *s/ Jeanne S. Whiteing* _____
                         JEANNE S. WHITEING
                         Whiteing & Smith
                         1136 Pearl Street, Suite 203
                         Boulder, CO 80302
                         (303) 444-2549
                         (303) 444-2365 fax
                         jwhiteing@whiteingsmith.com
                         Attorney for the Blackfeet Tribe

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2010, the foregoing FIRST AMENDED COMPLAINT was filed with the electronic filing system of the United States Court of Federal Claims, to which the following attorney is registered to be noticed.

Kristofor R. Swanson
Kristofor.Swanson@usdoj.gov

s/ Jeanne S. Whiteing
Jeanne S. Whiteing